COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
__________________________________________________________________

NUMBER 13-02-650-CV

MICHAEL R. MULVEY,                                                      Appellant,
 
v.

MOBIL PRODUCING TEXAS AND 
NEW MEXICO INC., ATLANTIC RICHFIELD 
COMPANY, VASTAR RESOURCES INC.,                             Appellees.
__________________________________________________________________

NUMBER 13-03-056-CV

MICHAEL R. MULVEY,                                                      Appellant,

v.

PECOS DEVELOPMENT CORPORATION, ET AL.,                  Appellees.
__________________________________________________________________ On appeal from the 343rd District Court of Live Oak, Texas__________________________________________________________________
 
                                             O P I N I O N

      Before Chief Justice Valdez and Justices Rodriguez and Garza
Opinion by Justice Garza
This case arises out of oil and gas exploration and development operations in Live
Oak County, Texas. Appellant, Michael R. Mulvey, brought various causes of action
related to the production of oil and gas from two oil wells against a large group of
defendants. The trial court granted a plea to the jurisdiction, special exceptions, and two
motions for summary judgment in favor of certain defendants and against Mulvey. Mulvey
appealed actions 7346-C-1 and 7346-C-2 separately to this Court.


 In this opinion, we
affirm the trial court’s judgment in both actions.
Background
Mulvey purchased various mineral fee interests and oil and gas leases in Block 71
of the Simmons Subdivision of Live Oak County. In 1951, prior to his purchases, the
parties holding the leases and mineral fee interests in Block 71 had entered into a Joint
Operating Agreement (“the 1951 JOA”). The 1951 JOA gave all leaseholders in the block
a preferential right to purchase any time one of the leases were to be sold to another party. 
The party from whom Mulvey purchased his lease did not follow this provision of the 1951
JOA before selling to Mulvey, in that he failed to notify the other leaseholders that the sale
was occurring and failed to provide these leaseholders an opportunity to exercise their
preferential right before Mulvey assumed title.  
When Mulvey purchased his lease, existing leaseholders of Block 71 oil and gas
leases included appellees Mobil and Arco, among others. Subsequently, Mobil and Arco
both entered into “farmout” agreements with Pecos Development Corporation (“Pecos”).


 
In accordance with the farmout agreements with Mobil and Arco, Pecos drilled and
completed two gas wells in Block 71: the 71-1 well and the 71-2 well. Upon completion of
the wells, Arco and Mobil each assigned their interests to Pecos, reserving a royalty
interest for themselves. Arco later assigned to Vastar the interests it had reserved under
its farmout and assignment to Pecos and all remaining interests. Neither Arco nor Mobil
complied with the 1951 JOA’s preferential right to purchase provision by giving Mulvey
notice and opportunity to purchase prior to entering into the Pecos farmout agreements. 
          Following the farmout to Pecos by Mobil and Arco, Mulvey and Pecos entered into
an agreement as part of Pecos’s effort to obtain a Rule 37 Exception to the spacing rules
of the Texas Railroad Commission in order for it to be able to complete the 71-1 well. See
16 Tex. Admin. Code § 3.37 (2003) (Tex. R.R. Comm’n, Statewide Spacing Rule). By this
agreement, Pecos assigned Mulvey an interest in production from the 71-1 well and Mulvey
released and relinquished his oil, gas and mineral lease in that tract where the well was
developed.  
Later, Mulvey successfully brought an action for forced pooling of the 71-2 well
before the Texas Railroad Commission under the Mineral Interest Pooling Act (“MIPA”). 
The Commission appointed Bay Rock Operating Company (“Bay Rock”), successor to
Pecos, as Operator of the well, and concluded that each working interest owner, including
Mulvey, should be allocated a percentage of the production from the well. Mulvey,
however, had to pay back to Bay Rock his pro rata share of its costs for drilling and
operating the well, plus a penalty of one hundred percent of that amount.
Mulvey now claims not to have been paid his proper royalties from either of the two
wells on Block 71. He filed several related complaints with the Texas Railroad Commission
against Pecos and Bay Rock, seeking these royalty payments. The non-operator
appellees (i.e., Mobil, Arco, Vastar and the Pecos Investors) were not parties to those
proceedings. The Commission ultimately dismissed Mulvey’s complaints and then denied
his motion for a rehearing. 
Shortly thereafter, Mulvey brought cause number 7178-C in the District Court of Live
Oak County against Pecos and Bay Rock. The parties entered into binding arbitration
proceedings and pursuant to these proceedings, the court awarded Mulvey his interests
from the 71-1 well but not the 71-2 well. Mobil, Arco, Vastar and the Pecos Investors were
not parties to this arbitration proceeding nor to the Texas Railroad Commission
adjudication. 
Mulvey then added a variety of other defendants, including appellees Mobil, Arco
and Vastar, as well as the Pecos Investors, to his district court claims against Pecos and
Bay Rock, due to their alleged vicarious and direct liability for the violations of his right to
be paid from the two wells. These appellees filed a plea to the jurisdiction, which was
granted by an order of the trial court. Mulvey amended his pleading to conform to this
order. Appellees then filed special exceptions, contending that the amended pleading
continued to refer to issues that the trial court ruled on in its granting of the plea to the
jurisdiction. Appellees also filed motions for summary judgment for the claims based on
the non-operators’ direct liability and on claims related to the 1951 JOA. The special
exceptions and two motions for summary judgment were granted. On its own initiative, the
trial court then severed the claims against the Pecos Investors and the claims against
Mobil, Arco and Vastar and assigned separate cause numbers to each new case. 
By four issues, Mulvey now appeals the trial court’s order on the plea to the
jurisdiction, special exceptions, and the two motions for summary judgment.


 In the
appeal of Mulvey v. Pecos Development Corp. et al., he also appeals the granting of the
order of severance. 
Plea to the Jurisdiction
By his first issue, Mulvey claims that the trial court erred in granting appellees’ plea
to the jurisdiction. More specifically, Mulvey disputes the striking of specific articles from
his petition as a result of the granting of appellees’ plea to the jurisdiction. We conclude
the articles in question involve matters within the primary jurisdiction of the Texas Railroad
Commission and were properly struck by the trial court. 
A plea to the jurisdiction challenges the trial court’s authority to consider the subject
matter of a specific cause of action. Rodriguez v. EMC Mortgage Corp., 94 S.W.3d 795,
797 (Tex. App.–San Antonio 2002, no pet.). The limits of the trial court’s subject matter
jurisdiction is a question of law and subject to de novo review by the appellate court. Tex.
Natural Res. Conservation Comm’n v. IT-Daly, 74 S.W.3d 849, 855 (Tex. 2000). In order
to prevail, the party asserting the plea to the jurisdiction must show that even if all the
allegations in the plaintiff’s pleadings are taken as true, there is an incurable defect
apparent from the face of the pleadings rendering it impossible for the plaintiff’s petition to
confer jurisdiction on the trial court. Rylander v. Caldwell, 23 S.W.3d 132, 135 (Tex.
App.–Austin 2000, no pet.); City of Hidalgo Ambulance Serv. v. Lira, 17 S.W.3d 300, 304
(Tex. App.–Corpus Christi 2000, no pet.). Thus, the court must construe the plaintiff’s
pleadings liberally in favor of jurisdiction. See Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993). Similarly, when an appellate court considers a trial
court’s order on a plea to the jurisdiction, it must construe the pleadings in the plaintiff’s
favor and look to the pleader’s intent. County of Cameron v. Brown, 80 S.W.3d 549, 555
(Tex. 2002). In addition to the pleadings, the court may also consider other relevant
evidence and must do so when necessary to resolve the jurisdictional issues raised. Bland
Ind. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). 
When a plaintiff fails to plead facts that establish jurisdiction but the petition does
not effectively demonstrate incurable defects in jurisdiction, the issue is one of pleading
sufficiency and the plaintiff should be afforded an opportunity to amend. Brown, 80
S.W.3d at 555; Peek v. Equip. Serv. Co., 779 S.W.2d 802, 805 (Tex. 1989). However, if
the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction
may be granted without allowing the plaintiff an opportunity to amend. Brown, 80 S.W.3d
at 555. 
The trial court’s order granting appellees’ plea to the jurisdiction included the
following finding:The Court finds that Michael R. Mulvey filed a Complaint with the Railroad
Commission of Texas (“the Commission”), Oil and Gas Docket No. XX-XXXXXXX, against Pecos Development Corporation and Bay Rock Operating
Company, for alleged violations of Commission Rules 27, 31, 37, 38, 40 and
for violation of various provisions of the Natural Resources Code. The Court
further finds that a hearing on Mulvey’s Complaint was held on July 15, 1994,
and that the Commission heard arguments and testimony, and received into
evidence testimony in written form with accompanying documentary
evidence. The Court further finds that, on March 14, 1995, the Commission
issued a Final Order dismissing the Complaint in its entirety. The Court
further finds that the Commission issued an Order denying Michael R.
Mulvey’s Motion for Rehearing on April 25, 1995. The Court further finds that
Articles X, XI, XII, and XVI of Plaintiff’s First Amended Petition assert claims
for violations of Commission Rules 27, 31, 37, 38, 40 and for violation of §
91.143 of the Natural Resources Code. 
 
It is, therefore, ordered that all claims asserted by the Plaintiff in Plaintiff’s
First Amendment Petition, to the extent based on an alleged violation of one
or more Commission rules, or violation of the Natural Resources Code §
91.143, are dismissed for lack of subject matter jurisdiction. 
 
Essentially, the trial court conceded to the jurisdiction of the Commission and accorded
complete deference to its March 14 decision regarding Mulvey’s claims.
          The authority of the Commission is not constitutional in nature and derives from
legislative grants of power and jurisdiction. Tex. Nat. Res. Code Ann. §§ 85.201 et seq.
(Vernon 2001). Specifically, the Texas Natural Resources Code grants the Commission
the power to regulate production and prevent waste, which is accomplished through the
promulgation of orders, rules and regulations. Id. § 85.202. Orders of the Commission
made within the parameters of its delegated authority are immune from collateral attack
and conclusively presumed to be valid unless directly attacked in a proceeding instituted
for that purpose. Grimes v. Dorchester Gas Prod. Co., 707 S.W.2d 196, 205 (Tex.
App.–Amarillo 1986, writ ref’d n.r.e.); see also Imperial Am. Res. Fund v. R.R. Comm’n,
557 S.W.2d 280, 284 (Tex. 1977) (deeming final orders of the Commission “prima facie
valid”); H.G. Sledge, Inc. v. The Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 602
(Tex. App.–Austin 2000, pet. denied) (same). When presented with a final decision of the
Commission, this Court may not substitute its judgment for that of the Commission “on
questions committed to agency discretion.” Tex. Gov’t Code Ann. § 2001.174 (Vernon
2000).
          Trial courts may share jurisdiction with the Commission and must fully assume
jurisdiction for certain questions involving oil and gas production; examples include the
determination of property rights and quieting title, legal construction of oil and gas contract
provisions, and other matters not statutorily committed to the discretion of the Commission. 
See Jones v. Killingsworth, 403 S.W.2d 325, 328 (Tex. 1965); Grimes, 707 S.W.2d at 205;
see also Amarillo Oil Co. v. Energy-Agri Prods., Inc., 794 S.W.2d 20, 26 (Tex. 1990). 
However, with regard to decisions of the Commission promulgated within the scope of its
regulatory authority, trial courts are mandated to take judicial notice of such decisions. See
Hill v. Heritage Res., 964 S.W.2d 89, 137 (Tex. App.–El Paso 1997, pet. denied). Trial
courts cannot impose their own judgment on Commission decisions or allow a collateral
attack to be launched by parties before them. See Alamo Express, Inc. v. Union City
Transfer, 309 S.W.2d 815, 827 (Tex. 1958) (concluding that collateral attack on a
Commission order was impermissible because administrative statutes provided sole
method of attack); Pub. Util. Comm’n v. Allcomm Long Distance, 902 S.W.2d 662, 666
(Tex. App–Austin 1995, writ denied) (“Generally, an agency’s final order, like the final
judgment of a court of law, is immune from collateral attack.”). 
          Mulvey complains of the striking of three subdivisions, Articles X, XI, and XIII, from
his first petition on the grounds that the trial court lacked subject matter jurisdiction.


 
Although Mulvey claims that the struck articles involved questions of title, which were
beyond the proper jurisdiction of the Commission, we disagree. Article X of Mulvey’s
petition contests the well permits and allowables awarded to Pecos and Bay Rock by the
Commission. Article XI contests enrichment and conversion of hydrocarbons and sale
proceeds from the wells permitted by the Commission to Pecos and Bay Rock. Article XIII
similarly claims that permits granted to Pecos and Bay Rock by the Commission were
improperly granted. All these articles primarily involve questions of permits, allowables,
and exceptions, which Mulvey himself concedes lie within the primary jurisdiction of the
Commission. Mulvey alleges that fraudulent misrepresentations were made by Pecos, Bay
Rock and appellees in the proceedings before the Commission leading to issuance of the
permits. However, “that type of fraud would consist of intrinsic fraud in the obtaining of the
Commission order and, accordingly, would not support a collateral attack upon the validity
of that order.” Grimes, 707 S.W.2d at 205. 
          Commission orders can be directly attacked if they are clearly illegal, unreasonable
or arbitrary. Houston Lighting & Power Co. v. Railroad Comm’n of Tex., 529 S.W.2d 763,
767 (Tex. 1975); accord Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,
467 U.S. 837, 844 (1984). However, such an attack must be launched directly against the
Commission itself and must be filed in Travis County: “Any interested person who is
affected by the conservation laws of this state or orders of the Commission relating to oil
or gas and the waste of oil or gas, and who is dissatisfied with any of these laws or orders,
may file suit against the Commission or its members in a court of competent jurisdiction
in Travis County to test the validity of the law or order.” Tex. Nat. Res. Code Ann. § 85.241
(Vernon 2001). 
          Mulvey failed to do this and thus, neglected to take advantage of the administrative
remedies available to him. Instead he has attempted to indirectly attack the decision of the
Commission by insinuating that the permitting decisions made by the Commission could
not have been reached in the absence of fraud. The trial court has no power to entertain
collateral attacks of Commission decisions made within the scope of its properly delegated
authority, and thus the three articles in Mulvey’s first petition collaterally attacking the
Commission order were not within the jurisdiction of the court. As such, those articles were
properly struck. Granting Mulvey an opportunity to amend the petition is unnecessary, as
no amendment would render this collateral attack permissible and Mulvey has already
utilized several opportunities to amend his pleadings.
          Mulvey argues that the supreme court’s decision in Amarillo Oil, 794 S.W.2d at 26,
which held that the Commission has no authority to determine title and ownership of
property, construe a lease or grant an injunction, demonstrates that the trial court could
properly maintain jurisdiction over his asserted causes. However, we have already
determined that the causes of action struck by the plea to the jurisdiction do not involve
matters such as those listed above which would require the expertise and authority of the
trial court. Also, the supreme court never overruled determinations made by the
Commission or allowed a collateral attack, and instead simply determined that there were
causes of action separate from the matters covered in the Commission’s orders. See id.
at 27-28. Here, in the articles specifically struck from Mulvey’s petition, there were no
allegations of acts by appellees that were not covered by the Commission’s order. 
          Thus, we conclude that the trial court did not err in granting appellee’s plea to the
jurisdiction, and we overrule Mulvey’s first issue on appeal. Because Mulvey has already
utilized several opportunities to amend his petition accordingly, we decline to allow him
further opportunity to amend. 
Special Exceptions
          By his second issue, Mulvey argues that the trial court should not have granted
appellees’ special exceptions to his second amended petition. 
          Trial courts have broad discretion to sustain or deny special exceptions as a
particular case may require; their decisions are therefore reviewed on appeal under an
abuse of discretion standard. Kutch v. Del Mar College, 831 S.W.2d 506, 508 (Tex.
App.–Corpus Christi 1992, no writ). The test for an abuse of discretion is whether the trial
court acted without reference to any guiding rules or principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241 (Tex. 1985). Also, when reviewing a dismissal
based on special exceptions, we accept as true all material factual allegations and all
factual statements reasonably inferred from the pleadings. Sorokolit v. Rhodes, 889
S.W.2d 239, 240 (Tex. 1994). If special exceptions are sustained, the pleader may amend
to meet the exceptions or decline to amend and test on appeal the validity of the trial
court’s rulings on the special exceptions. Freisenhahn v. Ryan, 960 S.W.2d 656, 658 (Tex.
1998); Cox v. Galeva Park Indep. Sch. Dist., 895 S.W.2d 745, 749 (Tex. App.–Corpus
Christi 1994, no writ).
          Mulvey repeats his arguments regarding the plea to the jurisdiction in his complaints
about the granting of the special exceptions. He asserts that because the special
exceptions were based on the articles struck by the plea to the jurisdiction, the exception
should not have been granted and should be reversed because the plea to the jurisdiction
should not have been granted. He offers no new or additional argument to support his
claim. Having overruled his objection to the plea to the jurisdiction, we similarly overrule
these contentions regarding the granting of the special exceptions. 
          Mulvey also complains that the order granting special exceptions was defective on
several procedural grounds. He complains specifically that there was a discrepancy
between the articles struck from his original petition by the trial court’s order on the plea
to the jurisdiction, and those struck by appellees’ special exceptions that were granted by
the trial court. 
          In its order regarding the plea to the jurisdiction, the trial court broadly ordered that
“all claims asserted” that were “based on an alleged violation of one or more Commission
rules or violations of the Natural Resources Code §§ 91.143" were to be dismissed for lack
of subject matter jurisdiction. Then, in the order replying to appellees’ requested special
exceptions, the trial judge granted the exceptions to only those claims that dealt with
Commission rules or violations of the natural resources code section 91.143 and claims,
uncontested on appeal, concerning Mulvey’s assertions that he was owed unliquidated
damages. From the analysis in the previous section, we have determined that the original
order granting appellees’ plea to the jurisdiction was reasonable. Thus, it was not an
abuse of discretion, and the trial court properly took its earlier determination regarding
jurisdiction into consideration when the special exceptions were granted. See Kutch, 831
S.W.2d at 508.
          Mulvey also asserts it was error for the trial court to grant appellees’ special
exception number 4, which took exception to Article XVIII of Mulvey’s second amended
petition. Mulvey argues that “the violations claimed in Article XVIII had not even occurred
when the first petition was filed,” and therefore the plea to the jurisdiction, which considered
only the first petition, could not also be prospectively applied to the pleas contained in
Article XVIII. 
          The first petition, upon which the plea to the jurisdiction was based, was filed
November 22, 1994. Article XVIII of the second amended petition discusses violations
that began between May 23 and August 17, 1994, when the well operators allegedly re-completed the 71-2 well, which had previously been plugged, and began unauthorized
production. Mulvey complained this was a violation of Commission rules. All complaints
based on violations of Commission rules were barred by res judicata in the trial court’s
earlier order on the plea to the jurisdiction. Thus, the claimed violations had occurred prior
to the first pleading and to the trial court’s order dismissing all such claims for lack of
subject matter jurisdiction. We conclude there was no error by the trial court in granting
appellees’ special exception number 4.  
          The Pecos Investors have urged this Court to follow the language of Dodson v.
Citizen’s State Bank of Dalhart, 701 S.W.2d 89, 95 (Tex. App.–Amarillo 1986, writ ref’d
n.r.e.), which provides that appellant, in filing a newer amended petition restating his
allegations to conform with special exceptions, waived any complaint that he might have
had about the court’s action in sustaining those exceptions to his former pleading. 
However, our Court has never held that amending pleadings in response to an order of the
trial court on special exceptions waives the party’s ability to contest that order on appeal,
and we decline to do so here. 
  Therefore, without applying Dodson, we overrule Mulvey’s second issue on appeal. 
Non-Operators’ Motion for Summary Judgment
          By his third issue, Mulvey asserts that the trial court erred in granting the non-operator appellees’ motion for summary judgment.


 Mulvey contends that the order
granting the appellees’ motion for summary judgment was overbroad and covered claims
of direct liability that were not raised in the motions. He also contends that appellees are
vicariously liable for the acts and omissions of the operators by their authorization and
ratification of the illegal acts of Pecos and Bay Rock. 
          This Court reviews summary judgments de novo. Natividad v. Alexsis, Inc., 875
S.W.2d 695, 699 (Tex. 1994); Tex. Commerce Bank-Rio Grande Valley, N.A. v. Correa,
28 S.W.3d 723, 726 (Tex. App.—Corpus Christi 2000, pet. denied). We take as true all
evidence favorable to the non-movant and indulge every reasonable inference in the non-movant’s favor. Trigo v. Munoz, 993 S.W.2d 419, 421 (Tex. App.–Corpus Christi 1999,
pet. denied). When the trial court’s order granting summary judgment does not specify the
grounds relied upon, we must affirm if any of the theories advanced are meritorious. See
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); State Farm Fire & Cas. Co.
v. S.S., 858 S.W.2d 374, 380 (Tex. 1993); Krishnan v. Law Offices of Preston Henrichson,
P.C., 83 S.W.3d 295, 303 n.4 (Tex. App.—Corpus Christi 2002, pet. denied).
          There are two kinds of summary judgment motions: traditional and no evidence. 
To prevail on a traditional motion for summary judgment, the moving party has the burden
of showing that there is no genuine issue of material fact and that it is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995) (per curiam); Tweedell v. Hochhiem Prairie Mut. Ins. Ass’n, 1 S.W.3d 304, 306 (Tex.
App.–Corpus Christi 1999, no pet.). A no evidence summary judgment asserts there is
no evidence of one or more essential elements of claims upon which the opposing party
would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). A no evidence motion for
summary judgment is properly granted only if the non-movant fails to bring forth more than
a scintilla of probative evidence to raise a genuine issue of material fact as to the
challenged element of the claims. See id.; AMS Constr. Co. v. Warm Springs Rehab.
Found., 94 S.W.3d 152, 159 (Tex. App.–Corpus Christi 2002, no pet.). When reviewing
an order granting summary judgment, the appellate court must also carefully consider the
extent of that order, as a summary judgment cannot be affirmed on appeal if it relies on
grounds that were not expressly set out in the motion or response. Stiles v. Resolution
Trust Corp., 867 S.W.2d 24, 26 (Tex. 1993).
          The motion for summary judgment was filed by the non-operator defendants. This
motion was both a traditional and no evidence motion. The trial court’s order does not
distinguish between the two and simply grants summary judgment for appellees, so we will
apply both standards of review.  
          Mulvey initially claims that the order granting summary judgment to appellees
covered claims of direct and vicarious liability, which was an error because appellees had
pled in their motion for summary judgment only that Mulvey alleged vicarious liability
against them and they were not vicariously liable as a matter of law. In their motions for
summary judgment, appellees asserted that as non-operators of the wells at issue, they
were not liable for conduct of the operator, and that Mulvey made no allegation that they,
as nonoperators and overriding royalty interest owners, ever personally or directly drilled
the wells, operated the wells, produced the wells, sold production, entered into contracts
or carried out any other act that Mulvey claims was done in violation of his rights. 
          The trial court granted partial summary judgment for appellees, ruling that Mulvey
“take nothing from (appellees) on his claims, damages, and exemplary damages relating
to or arising from allegations of Operators’ conduct, Operators’ drilling operations,
conversion, trespass, selling and marketing gas, drainage, development and pooling,
accounting, unpaid royalties and unjust enrichment claims.” This language mirrors exactly
the language used in the non-operators’ motion for summary judgment. Mulvey has
misinterpreted the summary judgment to extend to allegations of direct conduct by
appellees. However, all of these items relate to acts or omissions of the operators Pecos
and Bay Rock, who were not parties to this proceeding; none of them directly asserts any
wrongdoing by the non-operators. Therefore, the trial court confined its grant of summary
judgment to those grounds that were raised in the motion, in accordance with Stiles. Stiles,
867 S.W.2d at 26. The only question remaining for our review is whether there was a
genuine issue of material fact as to any elements of Mulvey’s causes of action against
appellees. 
          We must interpret the summary judgment motion to apply to only those allegations
of vicarious liability for the conduct of operators, as we have concluded above. The order
is intended to only address those issues related to the direct acts of the operators. 
Therefore, Mulvey’s allegations that the non-operator appellees owed him royalties directly
was not addressed by this order, and we do not have to consider whether either party
raised a genuine issue of material fact as to the royalties.


 Instead, the only question
remaining concerns the liability of the non-operator appellees for the actions of operators
Pecos and Bay Rock. 
          Mulvey asserts that appellees face liability for their “authorization and ratification”
of the acts of the operators. However, “authorization and ratification” are elements used
to determine if an agent-principal relationship exists, and are otherwise not used to
establish vicarious liability of two parties outside of an agency relationship. See, e.g.,
Texam Oil Corp. v. Poyner, 436 S.W.2d 129, 130 (Tex. 1968); Restatement (Second) of
Agency § 82. Mulvey failed to allege any agency relationship existed between the non-operator appellees and the operators. Mulvey also claims that the Pecos Investors
specifically should face liability as co-tenants of the oil wells with Pecos and Bay Rock. 
However, Mulvey is misconstruing the power structure between parties in an operator/non-operator relationship. The non-operator in a farmout retains an overriding royalty interest,
which is not a tangible or real property interest, and cannot dictate the actions of the
operator. See H.G. Sledge, 36 S.W.3d at 599 n.2 (“Although carved out of the working
interest, an overriding royalty interest confers no right to drill, develop, or produce the oil
and gas under the leased tract and this is viewed as nonpossessory,”) (citing 8 Williams
&. Meyers, Oil & Gas Law 1191 (1999) (emphasis added).). It is the operator who has the
exclusive right to drill, produce and exploit the minerals, and who also bears the burden of
paying all operating and drilling costs and royalties. Id. at 599 n.3 (citing 8 Williams &
Meyers at 1191).
          The relationship between the operator and non-operator is purely contractual and
therefore dictated by the contract terms, absent some other special relationship created
by the parties. See Cambridge Oil Co. v. Huggins, 765 S.W.2d 540, 544 (Tex.
App.–Corpus Christi 1989, writ denied). The contract in this case states: “Operator shall
have charge of the management, development, and operation of the lands including in the
Unit Area for the production of oil, gas, and other minerals therefrom.” Thus, by the
contract, the non-operators retained no ability to direct or control the actions of the
operators related to gas production. 
          As Pecos and Bay Rock were not acting as agents of the non-operator appellees,
and as those appellees had no contractual ability to control or direct the production of gas
or the payments of royalties by Pecos and Bay Rock to Mulvey or any other party, the trial
court was correct in granting the non-operator appellees’ motion for summary judgment. 
The non-operator appellees have demonstrated that there is no material issue of genuine
fact and they are entitled to judgment as a matter of law, thus fulfilling the requirements of
the traditional motion for summary judgment. Furthermore, appellees have successfully
demonstrated that there is no evidence of their liability for Mulvey’s claims against them,
and Mulvey has failed to raise a scintilla of evidence indicating otherwise. Accordingly,
both the no-evidence and traditional motions for summary judgment could have properly
been granted and Mulvey’s third issue on appeal is overruled. 
Joint Operating Agreement
          By his fourth issue on appeal, Mulvey contends that the trial court erred in granting
summary judgment to appellees on Mulvey’s 1951 JOA-related claims. Appellees joined
in a traditional motion for summary judgment asserting that Mulvey was not a party to the
1951 JOA and lacks standing to seek enforcement or damages under the agreement, and
his claims are barred by various forms of estoppel. 
          As discussed in the previous section, we will review the granting of this motion de
novo, indulging all evidence and inferences in the non-movant’s favor. See Natividad, 875
S.W.2d at 699; Trigo, 993 S.W.2d at 421. We will affirm if any theory advanced is
meritorious. See Dow Chem. Co., 46 S.W.3d at 242.
          Mulvey asserts that the non-operator appellees are liable to him for damages
because Pecos, financed by its investors, entered into farmout agreements with Mobil and
Arco under which Pecos drilled the Block 71-1 and 71-2 wells to earn assignments of Mobil
and Arco’s leases. He claims that the farmouts should have been subject to the
preferential right to purchase provision of the 1951 JOA, and that Arco and Mobil violated
the JOA when it made the farmouts to Pecos without first offering the right to Mulvey. 
Further, he asserts that all the appellees, not just Arco and Mobil, breached the 1951 JOA
by drilling, producing and operating the two wells and that he is accordingly owed royalties
from all parties. 
          Appellees initially dispute that Mulvey can even assert standing as a party to the
1951 JOA given that he too joined the agreement without the notice and right-to-purchase
provisions being fulfilled by his predecessor in interest. We disagree and conclude that
Mulvey, as the assignee and successor to an original party to the 1951 JOA, does have
standing to make this claim. See Nootsie, Ltd. v. Williamson County Appraisal Dist., 925
S.W.2d 659, 661 (Tex. 1996). 
          Appellees also argue that Mulvey is estopped from asserting that the farmout to
Pecos violated the JOA because he entered into an agreement with Pecos regarding the
farmout of which he now complains in the 71-1 well, and because he initiated a Mineral
Interest Pooling Act (“MIPA”) proceeding for the 71-2 well, subjecting himself to the
jurisdiction of the Railroad Commission. We interpret these arguments as asserting
multiple claims of quasi estoppel. 
          Quasi estoppel precludes a party from asserting, to another’s disadvantage, a right
inconsistent with a position previously taken by him. Lopez v. Munoz, Hockema & Reed,
22 S.W.3d 857, 864 (Tex. 2000); see also Bristol-Myers Squibb Co. v. Barner, 964 S.W.2d
299, 302 (Tex. App.–Corpus Christi 1998, no pet.). The doctrine applies when it would be
unconscionable to allow a person to maintain a position inconsistent with one in which he
acquiesced, or of which he accepted a benefit. See Lopez, 22 S.W.3d at 864; Atkinson
Gas Co. v. Albrecht, 878 S.W.2d 236, 240 (Tex. App.–Corpus Christi 1994, writ denied). 
Quasi estoppel forbids a party from accepting the benefits of a transaction or statute and
then subsequently taking an inconsistent position to avoid corresponding obligations or
effects. Atkinson Gas Co., 878 S.W.2d at 240 (citing Mexico’s Industries, Inc. v. Banco
Mexico Somez, S.N.C., 858 S.W.2d 577, 581 n.7 (Tex. App.–El Paso 1993 writ denied);
Turcotte v. Trevino, 499 S.W.2d 705, 712-13 (Tex. App.–Corpus Christi 1973, writ ref’d
n.r.e.)). The doctrine essentially requires (1) a previous action and (2) a subsequent
inconsistent action which is thereby sought to be estopped. A preferential right to
purchase, or right of first refusal, in particular is affected by an inconsistent action, as such
a right can be automatically terminated by lapse of time or by conduct of the offeree clearly
inconsistent with an intention to purchase. See A.G.E., Inc. v. Buford, 105 S.W.3d 667,
673 (Tex. App.–Austin 2003, pet. denied) (“Acquiescence in a sale that violates one’s right
of first refusal constitutes conduct inconsistent with an intention to purchase and therefore
terminates the offer.”). 
          Included in the record is a signed and dated document titled “Assignment of Interest
in Production” in which Pecos assigns an undivided one-twelfth interest in the 71-1 well to
Mulvey. The document explicitly refers to Pecos’ farmout agreement with Mobil and Arco
and notes that “Assignee [Mulvey] represents and warrants that the interest assigned
hereby is free and clear of all liens and encumbrances of any kind or character.” 
          Mulvey clearly has, through this assignment, recognized and benefitted from the
very farmout to Pecos by Mobil and Arco of which he now complains. We conclude that
he is estopped from making this complaint and therefore his grounds for appealing the
summary judgment of the trial court, at least with regard to the 71-1 well, are unfounded.          Mulvey’s rights regarding the 71-2 well are somewhat different in origin. With respect
to this well, Mulvey apparently made an unsuccessful attempt to enter another voluntary
assignment agreement with Pecos, the well operator. When this effort failed he then
initiated MIPA proceedings before the Railroad Commission for forced pooling. See Tex.
Nat. Res. Code Ann. § 102.011 (Vernon 2001). At the conclusion of this proceeding,
referred to as Oil and Gas Docket No. 2-97041 and dated April 6, 1992, the Commission
found that the production from the well “shall be allocated to working interest owners on
the basis of surface acreage of the tracts contained in the unit.” They further found that
Mulvey “will pay to Bay Rock Operating [the predecessor to Pecos] his pro rata working
interest share of the cost of drilling, completing and operating the well, plus a penalty of
one-hundred percent of that cost.” 
          Therefore, Mulvey has already asserted his interest in the proceeds from the well,
brought an administrative proceeding to enforce his rights, and was awarded a specific
amount of royalties from the production of the 71-2 well, though this was apparently
mitigated by the accompanying penalty. Regardless of the accompanying penalty, Mulvey
is estopped from now asserting that the 71-2 well farmout to Pecos and its successor Bay
Rock was improper under the 1951 JOA, as he has already benefitted from the
Commission’s decision regarding the division of profits from the farmout. As discussed
above, Mulvey may not employ a claim in trial court as a vehicle from which to launch a
collateral attack on a statutorily valid agency decision. Thus, he is estopped from both
maintaining that the farmout is improper when he has already benefitted from it and from
attacking the validity of the MIPA order. 
          Accordingly, Mulvey’s fourth issue is overruled. 
Severance
          By his fifth issue, Mulvey complains that the trial court erred and abused its
discretion in granting a severance of cause number 13-03-056-CV, styled Mulvey v. Pecos
Development Corp. et al., from the other claims Mulvey brought against various
defendants.


 However, we find that Mulvey failed to preserve any objection to the order
granting severance to Pecos, Bay Rock and the Pecos Investors, and has thus waived his
complaint. See Tex. R. App. P. 33.1. Mulvey denies that he waived this complaint. His
assertion, however, is not supported by the record, which includes a motion for new trial
from Mulvey following the entry of the various orders against him in which he raises the
other four issues previously discussed but fails to object to the motion of severance. 
Mulvey did object to the severance of Arco, Mobil and Vastar, and in that case (cause
number 7346-C-1), he did file a “Motion to Withdraw Orders Granting Summary Judgment
and Severance and Motion for Joinder;” however, this motion related to the severance of
appellees Arco, Mobil and Vastar only, and in fact pre-dated the separate order severing
the claims against Pecos, Bay Rock and the Pecos Investors. Mulvey is appealing the
order of severance in his appeal against Pecos, Bay Rock and the Pecos Investors and not
in the case where he had properly preserved his objection, against Mobil, Arco and Vastar. 
Thus, we conclude that in the case in which he appealed the order granting severance,
Mulvey failed to properly preserve his complaint, and thus waived his right to appeal the
severance of Pecos, Bay Rock and the Pecos Investors. 
          Mulvey’s fifth and final issue is overruled, and the judgments of the trial court in both
Mulvey v. Pecos Development Corp. et al., 13-03-056-CV, and Mulvey v. Mobil Producing
Texas and New Mexico et al., 13-02-650-CV, are affirmed.  
________________________
                                                                                      DORI CONTRERAS GARZA,
                                                                                      Justice 

Opinion delivered and filed 
this the 27th day of August, 2004.